The John Breuner Company, a corporation, v. Commissioner.
John Breuner Co. v. Commissioner
Docket No. 3167.
United States Tax Court
1944 Tax Ct. Memo LEXIS 18; 3 T.C.M. (CCH) 1267; T.C.M. (RIA) 44391; December 4, 1944
*18 Valentine Brookes, Esq., for the petitioner. Arthur L. Murray, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies of $2,810.54 in income tax and $6,173.49 in excess profits tax for the taxable year ended January 31, 1942. Although certain other items entered into the composition of the deficiencies but one issue was raised in the present proceeding, i.e., the reasonableness of salaries paid to petitioner's president and vice president. Findings of Fact Petitioner is a furniture and household furnishing store with its principal place of business in San Francisco and a smaller store in Fresno, California. During the taxable year its capital stock amounted to 2,543 shares, of which the Estate of John Breuner, Sr. held 805 shares; John Breuner, 778; John Breuner, trustee for Mildred Gibbings, 293; California Breuner, 250; Augusta Breuner, 150; with the remainder scattered among a number of owners. Prior to 1924 petitioner's business was managed solely by John Breuner, Sr. During that year John Breuner, Jr., hereinafter sometimes referred to as John Breuner, gave up the practice of law in which he had been engaged, and *19 associated himself with petitioner as vice president and as assistant to his father, the president and general manager. John Breuner had practiced law for six or seven years with average annual earnings of from $8,000 to $9,000, increased by about $20,000 in the last year of practice due to a large estate which he handled. On joining petitioner's staff, John Breuner began studying the buying of furniture and to this end traveled to the eastern markets and factories. His duty was to assist in the general management of the business in which the buying and merchandising were vital factors. He served as general assistant to his father until the latter's death in Novemver 1932. Petitioner's net sales, net earnings after taxes, dividends paid and total of officers' salaries paid for the years from 1933 to 1942, inclusive, were as follows: Fiscal Year
Net Earnings
Dividends
Total Officers
Ended
Net Sales
After Taxes
Paid
Salaries
1/31/33
$ 693,354.00
($118,620.00)
$25,275.00
1/31/34
565,845.00
( 21,950.00)
9,925.00
1/31/35
536,047.00
( 33,579.00)
17,500.00
1/31/36
675,240.00
18,388.00
26,417.00
1/31/37
894,727.00
34,488.00
$20,344.00
30,500.00
1/31/38
1,047,451.00
48,868.00
20,344.00
43,890.00
1/31/39
836,950.00
25,403.00
29,583.00
1/31/40
830,372.00
13,218.00
10,172.00
29,108.00
1/31/41
1,006,653.16
35,919.30
30,000.00
1/31/42
1,145,708.00
44,064.00
10,172.00
44,620.00
*20 From 1924 to 1932 petitioner paid John Breuner, Sr., as president, a salary of $25,000 a year and paid John Breuner, Jr., a salary which ranged from $5,775 for eight months of 1924 to $13,200 for the year 1928. John Breuner became president of petitioner after his father's death in November 1932. Petitioner's bankers at this time were seriously considering calling their loans and forcing a sale of the business but Breuner persuaded them not to do so but to give him a chance to put the business on its feet and make it a profitable concern. A representative of the bank audited petitioner's books and investigated conditions, and looked out for the bank's interests but did not participate in the management of the company. This condition obtained for about a year. Because of petitioner's financial condition during 1932 all salaries were reduced, that of the president being reduced to $7,500. Breuner also obtained a reduction of rent for the store property which is located in the better retail district of San Francisco and was able to obtain the elimination of a guaranteed $10,000 bonus for the term of the lease. Upon assuming the position as petitioner's president, Breuner set about *21 gradually to alter the character of petitioner's business. Theretofore it had catered to all classes, the bulk of its trade being in the middle grades, with emphasis on the lower grades. Breuner eliminated the cheaper lines, made the business one of better grade furniture, draperies, floor coverings, lamps and accessories. The company specialized in home decorations and home furnishings, with emphasis on fine merchandise. A business of this type requires a specialized skill in operation and management. The change successfully eliminated practically all of petitioner's competition. Breuner added to petitioner's business that of handling antiques, European imports, and old art pieces consisting of furniture, gift articles, lamps and lamp bases, and accessories. This feature has proven to be a profitable portion of petitioner's business and has added to the prestige of the store. Since 1932 Breuner has been both president and general manager of petitioner, a full-time occupation for him. He has charge of the entire business and personally supervises the buying and merchandising of the furniture. He keeps close check on sales management and salesmen. He is petitioner's principal furniture *22 buyer, visiting factories in Michigan, New York and North Carolina for this purpose. He and his wife, California Breuner, have made three trips to Europe to buy European merchandise. Since Breuner dislikes traveling, these trips are not considered as pleasure trips for him, all their time being spent in searching for and buying merchandise. In the fiscal year ended January 31, 1935, after Breuner assumed full management of petitioner's business, his salary was restored to $12,000. His salary was increased to $17,000 in 1936. By resolution of January 29, 1937, the directors voted Breuner a salary of $18,000 plus a bonus of 3 per cent of gross sales in excess of $800,000. On March 1, 1937, the directors increased the salary to $23,500, plus the same bonus. On January 27, 1938, Breuner's salary was fixed at $24,000, plus a 3 per cent bonus on sales in excess of $800,000. Pursuant to this resolution, Breuner was paid a salary of $31,092 during the taxable year ended January 31, 1938. Respondent allowed petitioner a deduction for this salary. In the three succeeding years, although entitled under the resolution to $25,088.50, $24,911.16 and $30,199.59, Breuner drew only $19,092, $20,000 *23 and $21,000, respectively. In the taxable year here involved Breuner drew his full salary in the amount of $34,220. During this year petitioner paid a dividend amounting to $10,172 and paid in to surplus approximately $30,000. California Breuner, wife of John Breuner, Jr., and vice president of the petitioner, is also the buyer and head of its gift department and has been with the petitioner since 1933. She came with the store as a stylist to help in Breuner's program of converting it into a high-grade type of store. It was at her suggestion that the store undertook the sale of old pieces and related items which have helped build petitioner's prestige and success. She has charge of petitioner's show windows on Geary Street in San Francisco and she does the buying of antique objects, gifts, chandeliers and accessories. On the three trips to Europe she visited European factories and out-of-the-way shops. During the taxable year, in addition to her former duties, she became head of the new gift department, with the consequent responsibilities for buying for the department, supervising the saleswomen and handling complaints. She customarily spends each morning working at the store and *24 works at home about two hours each afternoon on cards, records, and notes of what articles have been sold and other matters reference the merchandising thereof. She also spends considerable of each Saturday and Sunday on this work. Prior to the taxable year, Mrs. Breuner's salary was $6,000 a year, the deduction of which amount was allowed in various years by the Bureau of Internal Revenue. When her duties were increased by the addition of the gift department, her salary was increased to $7,400 in the taxable year. The salaries of $34,220 paid by petitioner to John Breuner and $7,400 paid to California Breuner were reasonable in amount, were not disguised payments of dividends, and were fair payment for services performed. Opinion VAN FOSSAN, Judge: The only issue is the reasonableness of salaries paid. This is a question of fact. Reasonableness of salaries paid is a relative term, depending on the kind and amount of business done by the company, the nature and extent of the services performed, and the peculiar circumstances present in the case. Here petitioner was engaged in a specialized business, one in which the personality of the controlling officers largely mark it for *25 success or failure, - a business requiring unusually careful buying and skillful merchandising with close coordination between the two. During the taxable year petitioner's sales exceeded $1,000,000. It paid a substantial dividend and made a substantial contribution to surplus. The total officers' salaries amounted to $44,620, approximately 4 per cent of sales. John Breuner served both as the president and the general manager of petitioner. He was the creative head of a business that requires specialized abilities. Mrs. Breuner, within her sphere, made a comparable contribution. In the taxable year her duties and responsibilities increased. Success attended the efforts of both Breuner and his wife. The business reflects their personalities and business acumen. In the year 1938 respondent approved comparable salaries for both officers. In our judgment, considering all the facts and circumstances, the salaries paid in the taxable year were reasonable and respondent erred in reducing them. Decision will be entered under Rule 50.